UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No. 05-89-P-S |
| | ) |
| RICHARD DIMOTT, | ) |
| | ) |
| Defendant | ) |

### RECOMMENDED DECISION ON MOTION TO DISMISS

The defendant moves for dismissal of this action due to a violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*. Motion and Incorporated Memorandum to Dismiss for Violation of the Speedy Trial Act ("Motion") (Docket No. 31) at 1. The government agrees that a violation of the Act has occurred. Government's Response to Defendant's Motion to Dismiss, etc. ("Opposition") (Docket No. 37) at 1. The only question for the court, therefore, is whether the dismissal should be with prejudice — the defendant's position — or without — the alternative advocated by the government. *See* Docket No. 39. An evidentiary hearing was held before me on February 8, 2006. I recommend that the motion be granted without prejudice.

### I. Applicable Statutes

The relevant portions of the Speedy Trial Act provide as follows:

> **(b)** Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days form the date on which such individual was arrested or served with a summons in connection with such charges.
>
> **(c)(1)** In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment or from the date the defendant has

1

>appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(b) & (c)(1).

>**(a)(1)** If, in the case of any individual against whom a complaint if filed charging such individual with an offense, no indictment or information if filed within the time limit required by section 3161(b) . . . , such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.  In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.
>
>**(2)** If a defendant is not brought to trial within the time limit required by section 3161(c) . . . , the information or indictment shall be dismissed on motion of the defendant.

18 U.S.C. § 3162(a).

>**(a)**  The trial or other disposition of cases involving —
>   **(1)** a detained person who is being held in detention solely because he is awaiting trial . . .
>shall be accorded priority.
>
>**(b)**  The trial of any person described in subsection (a)(1) . . . of this section shall commence not later than ninety days following the beginning of such continuous detention . . . .

18 U.S.C. § 3164.

## II.  Procedural Background

A complaint and synopsis were filed on April 8, 2005.  Docket Nos. 1 & 2.  The defendant was arrested on April 25, 2005.  Docket.  On April 26, 2005 the government filed a motion for detention, Docket No. 4; an initial appearance at which Michael Whipple, Esq. was appointed to represent the defendant was held, Docket No. 6; and an order of temporary detention was entered, Docket No. 7.  The detention hearing was scheduled for April 29, 2005 and continued for three weeks

on the defendant's motion. Docket Nos. 6 & 12-13. The hearing was reset for May 24, 2005, Docket No. 14, and continued to July 5, 2005 on the defendant's motion, Docket Nos. 18-20.

On July 5, 2005 the defendant waived preliminary examination and the detention hearing and I entered an order of detention. Docket No. 23. The next docket entry reflects the filing of an indictment of the defendant on October 26, 2005. Docket No. 26. Arraignment was held on November 1, 2005. Docket No. 29. The motion to dismiss now before the court was filed on November 16, 2005. Docket No. 31.

### III. Proposed Findings of Fact

Darcie McElwee, the assistant United States Attorney who handled this case from its inception until shortly before the hearing on the motion to dismiss, submitted an affidavit (Defendant's Exh. 1) in response to my order of January 3, 2006, Docket No. 39, in which she sets out the following facts relevant to the motion to dismiss. Affidavit of Darcie N. McElwee ("AUSA Aff.") (Docket No. 41). Ms. McElwee filed on April 8, 2005 the criminal complaint charging the defendant with violations of 18 U.S.C. §§ 922(g)(1) and 922(j). *Id.* ¶ 1. After the defendant's initial appearance in this court on April 26, 2005, Ms. McElwee informed Mr. Whipple that she would wait to hear from him as to whether his client wanted to plead guilty or to proceed by indictment before she would present the case to the grand jury. *Id*. ¶ 2. In his second motion to continue, the defendant waived his rights under the Speedy Trial Act from May 20, 2005 to July 15, 2005, Defendant's Second Unopposed Request to Continue Mr. Dimott's Preliminary Hearing (Docket No. 19) ¶ 6, although the parties agree that he intended to do so only through July 5, 2005, AUSA Aff. ¶ 3; Motion at 3.

The remaining facts are taken from the testimony and exhibits admitted at the hearing.

As a result of the same incident that gave rise to the current federal charges, the defendant was charged with burglary in state court, but that charge has been dismissed. Ms. McElwee did not ask

Mr. Whipple to include the waiver of the defendant's rights under the Speedy Trial Act in his second motion to continue. She did not discuss the Speedy Trial Act with Mr. Whipple at any time before he filed that motion. She had no contact with Mr. Whipple between May 20, when he called to ask her position on the second motion to continue, and July 5, when she and Mr. Whipple met with me in chambers. The defendant came into court that day to waive preliminary examination and a detention hearing. She and Mr. Whipple met later that day in her office, at Mr. Whipple's request, with Jonathan Chapman, who is chief of the criminal division of the United States Attorney's office. Mr. Whipple was late for the meeting, as he advised Ms. McElwee and Mr. Chapman he would be because of state court matters, and Ms. McElwee had to leave before the meeting was completed.

At the meeting, Mr. Whipple made a request to Mr. Chapman that he had previously unsuccessfully made to Ms. McElwee, namely that the defendant not be charged under the Armed Career Criminal Act, the application of which would significantly increase the possible sentence to which the defendant was exposed. Mr. Chapman explained to Mr. Whipple that the United States Attorney had no power to do what he asked. There was no discussion of the Speedy Trial Act during this meeting. At the end of the meeting, Mr. Chapman understood that Mr. Whipple would get back to Ms. McElwee about a possible plea to an information by the defendant. Mr. Whipple did not say at that time whether his client had decided to cooperate or not to cooperate. Mr. Whipple, on the other hand, left the meeting with the understanding that he and the United States Attorney "were done talking," and that plea negotiations were over. He did not ask for any delay in indicting the defendant during the meeting or at any other time. He made no further effort to contact Ms. McElwee or anyone else in the United States Attorney's office about this case.

Ms. McElwee testified that she next spoke with Mr. Whipple on September 19, 2005, when he returned a call that she had made to him at his office to inform him that the defendant had attempted to

escape. She testified that Mr. Whipple did not ask during this conversation that she refrain from indicting the defendant. Mr. Whipple testified that he was at home on September 19, 2005 following the birth of his third child on September 15, 2005; that he has no record and no memory of a conversation with Ms. McElwee on September 19; and that he would have made an entry in his billing log if he had had such a conversation, but there is no such entry. He also testified that he made all of his business calls from his home on his cell phone. Defendant's Exhibit 2 consists of portions of Mr. Whipple's cell phone records for the relevant period of time which show no calls to the office of the United States Attorney. Zoe Wall, who works in Mr. Whipple's office, testified that he was not in the office on September 19, 2005; that she received a call from a woman at a prosecutor's office who indicated that the defendant had tried to escape while in state court by using a paper clip to undo his handcuffs; that this woman did not ask her to call Mr. Whipple to tell him this or to ask him to call her; and that she tried to reach Mr. Whipple on his cell phone but was unsuccessful. Defendant's Exhibit 2 does show three calls between Mr. Whipple's cell phone and his office on September 19, 2005. Ms. Wall testified that no one from Mr. Whipple's office ever calls him at home on his land-line telephone; she doubted that anyone at the office even knew the number for this telephone.

On October 21, 2005, after being contacted by e-mail from the office of the clerk of this court with a query about the status of this and three other cases, Ms. McElwee wrote a prosecution approved memorandum about this case, which is required by the United States Attorney before seeking an indictment. On that day she also contacted Mr. Whipple and told him when he returned her call that an e-mail from the clerk's office had noted that the Speedy Trial Act clock was running, that she had to decide what to do and she needed to know whether the defendant was going to cooperate. Mr. Whipple responded merely that Ms. McElwee should do what she had to do.[1] He did not tell her that

---

[1] Mr. Whipple testified that Ms. McElwee asked him whether an update of the cooperation agreement she had provided earlier would (*continued on next page*)

5

plea negotiations were still ongoing or ask her to take any particular action. They did discuss when the grand jury would next be meeting.

Mr. Chapman testified that if Mr. Whipple had told him during the July 5 meeting that his client was not interested in cooperating or that negotiations were over, or words to that effect, Mr. Chapman would have told Ms. McElwee that the case was ready for indictment, which he did not do. He testified that it is not uncommon for things to take "several months" when a defendant's attorney is interested in proceeding by way of an information rather than an indictment, but also that it is not common for the defense attorney and the assistant United States Attorney not to have any contact during that period.

Ms. McElwee testified adamantly that she did not delay presenting this case to the grand jury for indictment in order to obtain a tactical or procedural advantage. Mr. Whipple was equally strong in his testimony that after July 5, 2005 he never did or said anything to suggest that the government should delay this prosecution in any way.

The government concedes that the time accrued under the Speedy Trial Act in this case "was 112 days, well in excess of the 30 days allowed by statute." Government's Response to Defendant's Motion to Dismiss, etc. (Docket No. 37) at 2-3.

### IV. Discussion

The First Circuit teaches that

> [t]he apparent purpose of the thirty-day arrest-to-indictment rule is to ensure that the defendant is not held under an arrest warrant for an excessive period

---

be necessary and he told her that it would not be. Ms. McElwee testified on rebuttal that she could only draft a "cooperation" or plea agreement after learning that a defendant would cooperate, and she was never told that in this case, so she would not have presented Mr. Whipple with such an agreement nor asked whether it needed to be updated.

6

> without receiving formal notice of the charge against which he must prepare to defend himself.

*United States v. Meade*, 110 F.3d 190, 200 (1st Cir. 1997) (citation and internal quotation marks omitted). Further,

> [i]n enacting the Speedy Trial Act, Congress acknowledged that a person subject to prolonged pretrial delays faces a number of debilitating factors, including the disruption of family life, loss of employment, anxiety, suspicion, and public obloquy.

*Id*. at 201 (citation and internal quotation marks omitted).

In deciding the question posed in this case, the court has discretion to decide whether the dismissal of the charges will be with or without prejudice. *United States v. Hastings*, 847 F.2d 920, 924 (1st Cir. 1988). "In considering the question, [the court] must start from a level playing field; there is no presumption either way." *Id*. (citation omitted). In addition to the factors listed in 18 U.S.C. § 3162(a)(2), the court may consider the length of the delay and the prejudice to the defendant stemming from the violation, or the absence of prejudice. *Id*.

### A. Seriousness of the Offense

The defendant is charged with being a felon in possession of 17 firearms, in violation of 18 U.S.C. § 922(g)(1), and with possession of 17 stolen firearms, in violation of 18 U.S.C. § 922(j). Criminal Complaint (Docket No. 1) at [1]-[3]. Due to his prior felony convictions, the defendant is exposed to a statutory minimum sentence of 15 years if he is convicted. *See* Opposition at 3-4. The First Circuit has held that charges of seven counts of possession of cocaine and methamphetamine with intent to distribute and one count of possession of a firearm during commission of a felony are "extremely serious." *Hastings*, 847 F.2d at 925. It noted that "[t]he graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence." *Id*. These charges, the First Circuit said, without mentioning the

7

potential sentence, "point[] directly toward dismissal without prejudice." *Id.* Similarly, in *United States v. Barnes*, 159 F.3d 4, 16 (1st Cir. 1998), the First Circuit held that a charge of conspiracy to import 110 kilograms of cocaine into the Untied States was "the type of drugs-for-profit scheme that Congress has deemed a serious felony," and thus "militates heavily in favor of permitting reprosecution." Judge Carter of this court, in *United States v. Saravia*, 851 F.Supp. 490, 493 (D. Me. 1994), held that the charges of conspiracy to distribute cocaine and possession with intent to distribute 250 grams of cocaine were "very serious," supporting a dismissal without prejudice.[2]

The defendant contends, without citation to authority, that the seriousness of the offenses with which he is charged is mitigated for purposes of section 3162 by the fact that he may still be tried in state court on the burglary charge that arose from the same conduct. No evidence in support of this assertion was presented. Nor has my research located any case law supporting this proposition. I doubt that Congress intended the federal courts to consider the availability of state-law charges when evaluating the seriousness of the federal charges at issue under section 3162.[3] In the absence of any authority holding otherwise, I decline to consider this argument.

I have similarly failed to located reported case law holding that the charges of being a felon in possession of a firearm and possession of a stolen firearm are sufficiently serious to weigh in favor of dismissal of charges without prejudice under the Speedy Trial Act. However, courts have found such charges to be sufficiently serious to mandate dismissal without prejudice under the similar speedy trial

---

[2] Counsel for the defendant relies heavily on Judge Carter's admonition in *Saravia* that "[t]he Court will not be inclined to treat future *sub rosa* violations of the Act with such leniency." 851 F. Supp. at 493; Defendant's Response to Order Reserving Ruling on Defendant's Motion to Dismiss, etc. (Docket No. 43) at 2. The violation that occurred in this case is quite different from the violation at issue in *Saravia*, where the prosecutor effectively decided unilaterally that the mandates of the Speedy Trial Act could be set aside. 851 F. Supp. at 491-93.

[3] Under Maine law, burglary is usually a Class C crime. 17-A M.R.S.A. § 401(1). A Class C crime carries a penalty of imprisonment for up to five years. 17-A M.R.S.A. § 1252(2)(C). It is possible that burglary may be charged as a Class B crime, with a potential term of imprisonment up to ten years, 17-A M.R.S.A. § 1252(2)(B), or a Class A crime, with a potential term of imprisonment up to twenty years, 17-A M.R.S.A. § 1252(2)(A), but the defendant made no attempt to show that any of the aggravating factors were present in this case. As counsel for both the government and the defendant emphasized at the hearing, the defendant faces a (*continued on next page*)

standard of the Interstate Agreement on Detainers Act, *United States v. McKinney*, 395 F.3d 837, 840-41 (8th Cir. 2005); *United States v. Martinez*, 376 F.Supp.2d 1168, 1175-76 (D.N.M. 2004). I accordingly conclude that the first statutory factor weighs in favor of dismissal without prejudice.

### B. Circumstances Leading to the Delay

As I informed the parties at the close of the hearing, there is no evidence to support a conclusion that the government's delay in this case was intentional and I impute no improper motive to its clear negligence. "Even though a prosecutor does not bear the burden of monitoring the court's compliance with the Speedy Trial Act in absence of an announced rule, district courts do look to prosecutors for assistance as officers of the court." *Barnes*, 159 F.3d at 16-17 (citation and internal punctuation omitted). "Where, as here, the actual speedy trial violation resulted solely from neglect rather than intentional misconduct, that circumstance tips ever so slightly in favor of dismissal without prejudice." *Barnes*, 159 F.3d at 17; *Hastings*, 847 F.2d at 925. There is no evidence of a "pattern of governmental inattention" in the existence of two cases in which the Speedy Trial Act has been violated, so the situation cannot "become[] more conducive to dismissal with prejudice," *Hastings*, 847 F.2d at 925, for that reason. *See also Saravia*, 851 F. Supp. at 493. "[U]nintentional neglect . . . weights in favor of dismissal without prejudice." *United States v. Medugno*, 233 F.Supp.2d 184, 186 (D. Mass. 2002). I conclude that, in the circumstances here, this factor weighs slightly in favor of dismissal without prejudice.

### C. Effect of Reprosecution

As the First Circuit said in *Barnes*,

> [t]here is little doubt that the harsh remedy of dismissal with prejudice has greater deterrence value than its counterpart. But considerations of general deterrence are not dispositive or else dismissal with prejudice would impermissibly become the preferred tool.

---

mandatory minimum sentence on the federal charges of fifteen years under the Armed Career Criminal Act.

9

159 F.3d at 17-18. In making this observation, the First Circuit relied on the words of the Supreme Court in *United States v. Taylor*, 487 U.S.326, 342 (1988) ("Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds.").

When there is a causal connection between the government's behavior and the speedy trial infraction, that link works in favor of dismissal with prejudice. *Hastings*, 847 F.2d at 926-27. The weight is overborne, however, in the absence of special prejudice to the defendant. *Id*. at 926. "[T]heoretical prejudice alone is . . . too fragile a reed to support 'with prejudice' dismissal — at least where the charges are grave and the delay fribbling." *Id*. at 928. I find a delay of 82 days beyond the statutory deadline to be anything but "fribbling,"[4] and I believe that the administration of the Speedy Trial Act would be best served by dismissal with prejudice in this case. *See also Saravia*, 851 F. Supp. at 493. However, I also find that the defendant has not shown actual prejudice in this case. In response to my question about prejudice, defense counsel speculated at the close of the hearing that the memories of witnesses who will be called to testify at the hearing on the motion to suppress that was previously filed in this case and will presumably be filed again should the charges be reinstituted will be more vague due to the passage of time. That simply does not constitute actual prejudice. Counsel also cited the fact that the defendant has been incarcerated for nine months, "a sentence imposed with no process whatsoever." The length of that incarceration bothers me as well. However, even if I were to find that the final statutory factor weighs in favor of dismissal with prejudice, I could only conclude, given the First Circuit's construction of the Speedy Trial Act, that

---

[4] However, the First Circuit did find in *Barnes* that a delay of 121 days, in the absence of factual evidence suggesting how the delay actually prejudiced the defendant, did not weigh in favor of dismissal with prejudice. 159 F.3d at 15-16, 18.

10

this factor is outweighed, albeit narrowly, by the other two. *See generally United States v. Scott*, 270 F.3d 30, 57-58 (1st Cir. 2001).

## V. Conclusion

For the foregoing reasons, I recommend that the defendant's motion to dismiss be **GRANTED WITHOUT PREJUDICE**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 13th day of February, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge